# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | § | |
|---|---|---|
| MATT MCCORMICK, Individually and on Behalf of the Classes, | § § § § | |
| *Plaintiff,* | § § | Civil Action No. 4:22-CV-878 |
| v. | § § | Judge Mazzant |
| ICE ENTERPRISE, LLC, | § § § | |
| *Defendant.* | § § § | |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant ICE Enterprise, LLC's Amended Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #14). Having considered the motion, the pleadings, and the relevant law, the Court finds that the motion should be **DENIED.**

## BACKGROUND

This case arises out of a company's decision to solicit business to individuals listed on the National Do-Not-Call Registry (the "Registry") via telephone calls. Plaintiff Matt McCormick ("McCormick") filed this putative class action against Defendant ICE Enterprise, LLC ("ICE") based on allegations that it has repeatedly violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") and sections of the Texas Business and Commerce Code (Dkt. #10 at pp. 26–29). McCormick alleges that it violated these statutes when it intentionally directed numerous telephone calls and text messages to him and others, despite being listed on the Registry.

McCormick is an individual residing in Denton County, Texas (Dkt. #14, Exhibit 1 at p. 1). ICE is a limited liability company comprised of two members, both of whom reside in Idaho (Dkt. #14, Exhibit 1 at p. 1). Accordingly, ICE is a citizen of Idaho (Dkt. #14, Exhibit 1 at p. 1).

On July 1, 2014, McCormick registered his telephone number—which contains a Texas area code and ends in -9117—on the Registry (Dkt. #10 at p. 8).[1] Prior to receiving any calls relevant for this lawsuit, McCormick asserts that his number had been listed on the Registry for more than thirty-one (31) days (Dkt. #10 at p. 4). Further, McCormick alleges he did not give any prior consent, written or otherwise, to ICE prior to receiving the calls.

McCormick asserts that ICE obtained his phone number and address from a national database. ICE then used that information to contact him to sell its services, which includes "completing Department of Transportation registrations" (Dkt. #10 at p. 10). According to his complaint, McCormick received a call from the number (208) 684-6470, with caller ID indicating that the caller was "ICE ENTERPRISE," on the following dates:

- January 12, 2022;
- January 25, 2022;
- March 10, 2022 (twice);
- June 7, 2022;
- June 10, 2022 (twice);
- June 14, 2022; and
- June 15, 2022 (twice)

(Dkt. #10 at pp. 8–10). In addition, McCormick alleges he received "numerous unsolicited text messages," despite informing ICE that he was uninterested (Dkt. #10 at pp. 13–16). McCormick further alleges that he spoke with David Drake ("Drake"), president of ICE. In that conversation, Drake admitted to previously contacting McCormick and once again, attempted to solicit business (Dkt. #16, Exhibit 1 at pp. 6–7).

---

[1] *See generally* https://donotcall.gov.

On November 11, 2022, ICE filed the present motion to dismiss for lack of personal jurisdiction (Dkt. #14). On December 2, 2022, McCormick filed his response in opposition to ICE's request (Dkt. #16). On December 9, 2022, ICE filed its reply (Dkt. #17).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). After a nonresident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists. *See, e.g.*, *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a *prima facie* case supporting jurisdiction," if a court rules on a motion without an evidentiary hearing. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). Thus, courts accept a plaintiff's non-conclusory, uncontroverted allegations as true, and resolve conflicts between the facts contained in the parties' affidavits in the plaintiff's favor. *See, e.g.*, *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

## ANALYSIS

In the pending motion, ICE requests that the Court dismiss McCormick's claims against it for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) (Dkt. #17 at p. 2).

McCormick responds with a single theory regarding how the Court has personal jurisdiction over ICE. McCormick contends that ICE obtained his information through a federal database that provided ICE with the following information: a telephone number containing a Texas area code, and an address representing that he was a Texas resident. With that information, ICE then executed an exorbitant number of phone calls and text messages soliciting its services to McCormick (Dkt. #10 at p. 2). As such, these activities should be sufficient to show specific jurisdiction.

The Court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020). First, absent a controlling federal statute regarding service of process, the Court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant.[2] *Id.* Second, the Court must determine whether the exercise of jurisdiction is consistent with due process. *Id.*

In Texas, the long-arm statute's broad doing business language authorizes personal jurisdiction over a nonresident defendant as far as the federal constitutional requirements of due process will allow. *Id.* (citing *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010)). The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant when the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

"[M]inimum contacts" can give rise to two types of personal jurisdiction: general or specific.[3] *See, e.g., Frank*, 947 F.3d at 336. Specific jurisdiction is proper when a plaintiff alleges

---

[2] The TCPA is silent regarding service of process. *Betz v. Aidnest*, No. 1:18-CV-292, 2018 WL 5307375, at *4 & n.2 (D.D.C. Oct. 26, 2018). Therefore, the Court will analyze Texas's long-arm statute.

[3] General jurisdiction exists only when the defendant's contacts with the forum are so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Since the Court finds that it has specific jurisdiction over ICE for this case, it need not conduct an analysis regarding general jurisdiction.

a cause of action that grows out of or relates to a contact between the defendant and the forum state. *See, e.g.*, *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021). In evaluating whether due process permits the exercise of specific jurisdiction, the Court will consider: (1) whether the defendant has "purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). If the plaintiff successfully satisfies the first two prongs of the specific jurisdiction analysis, "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271. The Court will begin with the first two prongs—the minimum contacts analysis.

### I. Purposeful Availment

The first prong of the specific jurisdiction analysis requires the Court to analyze purposeful availment—the "constitutional touchstone" of personal jurisdiction. *Carmona*, 924 F.3d at 193 (quoting *Burger King*, 471 U.S. at 474). It is "essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 222 (5th Cir. 2012).

McCormick contends that ICE has purposefully availed itself of the privilege of conducting business in Texas by obtaining information about him from a federal database, specifically, McCormick's phone number and home address (Dkt. #10 at pp. 2–3). Further, McCormick asserts that ICE is aware it is calling and texting residents of Texas, and thus, *intentionally* dialing into the state of Texas (Dkt. #10 at pp. 2–3).

In response, ICE asserts that "personal jurisdiction must be based on the actions of [ICE] that are purposefully directed toward the forum" (Dkt. #14, Exhibit 1 at pp. 1–2). Namely, ICE contends that McCormick has failed to bring forth any allegations that ICE purposefully directed any action towards the State of Texas (Dkt. #14, Exhibit 1 at pp. 1–2). In addition, ICE argues that McCormick did not allege that he was in Texas when he received any of the phone calls, which ICE argues is required per the Court's prior decisions on the matter (Dkt. #14, Exhibit 1 at pp. 6–7). Finally, ICE denies making any phone calls to McCormick, so there is no basis on which the Court can exercise specific jurisdiction (Dkt. #14, Exhibit 1 at p. 8).

McCormick has the better argument. To begin, when conducting this analysis, the Court recognizes that it will take the allegations of the plaintiff's complaint as true, so long as they are not contradicted by defendant's affidavits. *Quintana*, 259 F. Supp. 2d at 557. Therefore, it will not be determined at this juncture whether the phone calls were made by ICE, as the Court will accept the fact that ICE called McCormick as true.

In determining personal jurisdiction in cases arising from tortious conduct directed towards a forum state by a nonresident defendant, the Fifth Circuit has issued some decisions that the Court finds instructive here. First, minimum contacts may be satisfied when a nonresident defendant intentionally commits "an act outside the state that causes tortious injury within the state." *See e.g.*, *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999). Further, the Fifth Circuit noted, "[e]ven an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Id.* (citations omitted). Such an analysis is a "claim-specific inquiry." *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 489 (5th Cir. 2018) (quoting *McFadin v. Gerber*, 587 F.3d

753, 759 (5th Cir. 2009)). For a fraud claim, the Fifth Circuit has permitted the exercise of specific personal jurisdiction "where a nonresident defendant places a call to a forum and makes false statements over the phone to a forum resident." *See id.* at 491 (collecting cases). However, in response to a defamation claim, the Fifth Circuit declined to exercise personal jurisdiction on a nonresident defendant's tortious *response* to one uninitiated, unsolicited phone call. *See Wilson v. Belin*, 20 F.3d 644, 649 (5th Cir. 1994) (emphasis in original).

Since this analysis requires the Court to look at the specific claims at issue, it will note the history of the TCPA. The TCPA was enacted in 1991 in response to a "torrent of vociferous consumer complaints about intrusive robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2344 (2020) ("Consumers were 'outraged' and considered robocalls an invasion of privacy 'regardless of the content or the initiator of the message.'"). As a result, the TCPA imposed various restrictions on the use of automated phone equipment. *Id.* Namely, the legislation promulgated a duty upon solicitors to ensure the private receiving party's name was not listed on the Registry. *See id.* If this duty is breached, then private parties can bring action against the solicitor, to whom may be subject to a penalty of $1,500 for each violation, or three times their actual monetary loss. *See id.* at 2345. However, this duty is waived if the private receiving party provides the solicitor with prior express written consent. *See id.* at 2344. Therefore, while ICE attempts to classify McCormick's argument as relying solely on the fact that "Defendant made calls," such calls are precisely what Congress was attempting to prevent.

In *Trois*, the Fifth Circuit focused on the relationship between the defendants and the forum via conference call to discuss auctioning items located in Texas for its jurisdictional analysis. *See* 882 F.3d at 491–92 (noting the contact was not fortuitous). Here, while the Court finds this persuasive to apply for a TCPA claim, it is also skeptical of setting a rule that personal jurisdiction

7

may be satisfied strictly on the basis that a nonresident defendant dialed a Texas resident. *See id.* at 491 ("[W]e are somewhat wary at drawing a bright-line at who may push buttons on a telephone.").

Rather, instead of focusing on solely which party initiated the phone call or mere knowledge of the plaintiff's residence, the Court will focus on the following facts: (1) that ICE failed to ensure that the Texas party was on the Registry despite having Texas information; (2) the frequency with which ICE would contact McCormick; and (3) during the calls, how ICE "was the key negotiating party who made representations regarding [its] business in a call to Texas." *Id.*; *Cunningham v. CBC Conglomerate*, LLC, 359 F. Supp. 3d 471, 481 (E.D. Tex. 2019) (citing *Cunningham v. Nationwide Sec. Sols., Inc.*, No. 3:17-CV-337, 2018 WL 4575005, at *14 (N.D. Tex. Aug. 21, 2018)). For those reasons, ICE should *reasonably anticipate* being haled into the same forum as the residing party to which it "garner[s] business and make[s] specific reservations." *See Trois*, 882 F.3d at 491. The fact that ICE sent text messages on top of calling McCormick only makes McCormick's point stronger. *See Keim v. ADF MidAtlantic, LLC*, 199 F. Supp. 3d 1362, 1369 (S.D. Fla. 2016). Since intentional conduct on behalf of the party engaging in tortious conduct acts as a catalyst for the pending litigation, the Court's execution of specific *in personam* jurisdiction in this case is proper.

Nevertheless, ICE contends that its contact with Texas is too "random, fortuitous, or attenuated" (Dkt. #14, Exhibit 1 at p. 6). In responding to this argument, the Court will address its previous line of cases on this matter. *Cunningham v. Adv. Tele-Genetic Counseling, LLC*, No. 4:20-CV-143, 2021 WL 1174954, at *1 (E.D. Tex. Mar. 29, 2021); *Cunningham v. Assured Auto Grp., Inc.*, No. 4:20-CV-141, 2021 WL 1139744, at *1 (E.D. Tex. Mar. 2, 2021) *R.&R. adopted*, No. 4:20-CV-141, 2021 WL 1121118 (E.D. Tex. Mar. 24, 2021); *Cunningham v. Upwell Health,*

*LLC*, No. 4:19-CV-894, 2020 WL 4723175, at *1 (E.D. Tex. July 21, 2020), *R.&R. adopted*, No. 4:19-CV-894, 2020 WL 4698322 (E.D. Tex. Aug. 13, 2020); *CBC Conglomerate*, 359 F. Supp. 3d at 481 (collectively, the "*Cunningham* cases").

In the *Cunningham* cases, the Court disposed of the lawsuits in favor of the Tennessee plaintiff for a lack of personal jurisdiction. The Court relied on similar, but not identical, arguments to the ones raised here. However, the distinctions have legal significance. To begin, in most of the *Cunningham* cases, the defendants provided statements by various officials that they never actually contacted the plaintiff. *Adv. Tele-Genetic Counseling,* 2021 WL 1174954, at *6–8; *Upwell Health*, 2020 WL 4723175, at *6. Since the plaintiff had offered no evidence to contravene such testimony, the Court found it sufficient to conclude that the plaintiff's had not satisfied its burden for the minimum contacts analysis. Here, not only did ICE not raise such evidence, but McCormick included in his pleadings that he spoke with Drake, the President of ICE (Dkt. #16, Exhibit 1 at pp. 6–7). Since nothing has been offered to contradict this evidence, the Court will presume it as true for the purposes of this analysis. *Quintana*, 259 F. Supp. 2d at 557. The conversation with Drake is important for the next distinction, as it was alleged in the *Cunningham* cases that the defendant merely hired other people to contact the plaintiff. *Assured Auto Grp., Inc.*, 2021 WL 1139744, at *5. This is not a concern here, since one of the two members of ICE was recorded calling McCormick himself. Finally, arguably to most important distinction, in the *Cunningham* cases, the plaintiff was a Tennessee resident. *See CBC Conglomerate*, 259 F. Supp. 3d at 479–81 (explaining that fact that plaintiff was in Plano, Texas at the time of the call was not sufficient to show how the defendants took directed actions towards Texas when plaintiff was resident of Tennessee). Here, the plaintiff is a resident of Texas, with Texas information. Therefore, based on those distinctions, the *Cunningham* cases would not apply. It is clear that in

this case, ICE purposefully took McCormick's personal information that stated he was a Texas resident and intentionally contacted him regarding business. Thus, ICE's contacts in Texas for this TCPA action were not too random, fortuitous, or attenuated.

ICE further argues that the Court should not be persuaded that the use of McCormick's information would have informed them that they were communicating with a Texas resident. *See Tornado Bus Co. v. Bus & Coach Am. Corp.*, No. 3:14-CV-3231, 2014 WL 7333873, at *4 (N.D. Tex. Dec. 23, 2014) ("[R]eliance on telephone calls and email can no longer reliably prove purposeful availment, given the fact that technology now permits an individual anywhere in the world to be reached by a single telephone number or a single email address.'"). While the Court does not disagree with the *Tornado Bus Co.* case, it finds that a telephone's area code is not necessarily immaterial. For instance, if a dialing defendant acquires an individual's phone number from the Registry, and intentionally solicits business to that individual on a constant basis, the Court finds that it is reasonable to assume the defendant has purposefully availed itself of the privilege of conducting activities in the forum state in which the individual resides. *See generally Trois*, 882 F.3d at 490–91 ("[T]he Fifth Circuit notably holds that a defendant that initiates a telephone call and allegedly commits an intentional tort purposefully avails itself of the state where the effect of the tort fell and can therefore be subject to personal jurisdiction there."). Thus, the Court takes ICE's use of McCormick's area code into account.

To further support the conclusion that ICE solicitation of business towards McCormick in this case is sufficient for purposeful availment purposes, the Court points to a case out of the Southern District of Texas that has come to the same conclusion. *See Thomas v. Life Protect 24/7 Inc.*, 559 F. Supp. 3d 554 (S.D. Tex. 2021). In *Thomas*, the district court treated robocalls "akin to traditional intentional torts" for the purposes of plaintiff's TCPA claim because they occur only

10

by intention and design. *Id.* at 566. In its reasoning, the district court expounded on the "intentionality" aspect of the defendant's phone calls, as they do not happen by chance or fortuity *Id.* The district court relied on the classification of unwanted robocalls as "intrusive" and a "nuisance and privacy invasion." *Id.* (citing *Barr*, 140 S. Ct. at 2344). In fact, the district court further noted how the Fifth Circuit has gone as far as attributing similar calls to the foundational torts of trespass and nuisance. *See id.* (citing *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 690–93 (5th Cir. 2021)).

However, the issue in *Thomas* turned on whether the effects of the defendant's calls were "seriously harmful." *Id.* In response, the district court referred to the underlying reason for the TCPA legislation, which was enacted to explicitly crack down on spam calls and their "cumulative effects." *Id.* (citation omitted). The district court concluded that "[w]here a business is alleged to engage in intentional practices assuredly designed to manifest results . . . in contravention of a federal statute, the act of reaching out in that prohibited manner is purposeful availment . . . in whatever state that call reaches." *Id.* at 568 (citing *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 2021)).

ICE's final contention is that the Court should focus on its relationship with Texas, rather than the relationship between McCormick and Texas (Dkt. #14, Exhibit 1 at p. 6) (citing *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 103 (5th Cir. 2018)) ("[T]he plaintiff's own contacts with the forum [cannot] be used to demonstrate contacts by the defendant."). While the Court inherently agrees with the long-established principle in *Sagha*, it is not applicable here. The analysis at hand concerns ICE's purposeful actions in acquiring McCormick's number via the Registry and the subsequent attempts to contact McCormick with that information.

Here, the Court adopts the reasoning in *Thomas* and concludes that ICE's conduct can be

attributed as tortious in nature, and therefore, it is apparent that ICE has purposefully availed itself of the privileges of conducting activities in Texas after executing a multitude of robocalls to McCormick over a short period of time (Dkt. #16, Exhibit 2 at pp. 1–3) (enumerating calls and text messages made by ICE to McCormick). *See Thomas*, 559 F. Supp. 3d at 567–69. Similar to *Thomas*, ICE should be fully prepared to defend itself in the forum state in which it is soliciting business. If the Court were to grant ICE's request, it would permit the very nature the TCPA legislation was designed to abate.

And so, the Court finds that ICE's activities exploit the benefits and protections of Texas such that it could reasonably anticipate being haled into court here. *Carmona*, 924 F.3d at 193.

## II. Relatedness

Due process also requires that "the litigation results from alleged injuries that 'arise out of or relate to'" the activities associated with the availment. *Burger King*, 471 U.S. at 472–73. A court may exercise specific jurisdiction over a non-resident defendant only when a "sufficient nexus" exists "between the [defendant]'s contacts with the forum and the cause of action." *Clemens v. McNamee*, 615 F.3d 374, 378–79 (5th Cir. 2010).

McCormick contends that its TCPA violation claim arises out of or relates to ICE's extensive contacts in Texas. It is through those contacts that ICE's practice of making telemarketing calls to individuals on the Registry without prior express consent infringes on McCormick's TCPA guarantees (Dkt. #10 at p. 4). ICE does not explicitly oppose this requirement. The Court is satisfied that McCormick's claim is sufficiently related to ICE's Texas-related contacts. *See Ford Motor Co.*, 141 S. Ct. at 1028; *see also Thomas*, 559 F. Supp. 3d at 568 ("Where a business is alleged to engage in intentional practices assuredly designed to manifest results across the country in contravention of a federal statute, the act of reaching out in that prohibited manner is purposeful availment of "the privilege of causing a consequence" in whatever

state that call reaches.") (citing *Wien Air Alaska,* 195 F.3d at 213).

### III. Fair Play and Substantial Justice

Because McCormick has made a valid showing of minimum contacts, the Court must now determine if personal jurisdiction would violate the notions of "fair play" and "substantial justice." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). When the plaintiff successfully satisfies the first two prongs of the specific jurisdiction analysis, "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271. In this inquiry, the Court examines five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King*, 471 U.S. at 477.

For this portion of the analysis, ICE must make a "compelling case" that the assertion of jurisdiction would not be fair or reasonable. *Burger King Corp.*, 471 U.S. at 477. It is highly uncommon for an assertion of jurisdiction to be unfair once minimum contacts have been established, meaning that the "fair play and substantial justice" factor is rarely outcome determinative. *Elevacity U.S., LLC v. Schweda*, No. 4:22-CV-042, 2022 WL 3704537, at *10 (E.D. Tex. Aug. 26, 2022). This case is no exception.

Here, ICE does not make any attempt to satisfy its burden of showing that the Court's exercise of jurisdiction would be unfair or unreasonable. McCormick argues that ICE cannot because "[m]ost, if not all, pretrial discovery and pretrial motions work can be done remotely." (Dkt. #16 at p. 9). While this may certainly be true, the Court concludes that ICE has failed to meet its burden, and therefore, its exercise of specific jurisdiction over ICE is fair and reasonable. In addition, Congress has a compelling interest in the protection of its citizens against unwanted

and intrusive telemarketing calls. *Cunningham v. Politi*, No. 4:18-CV-362, 2019 WL 2519702, at *3 (E.D. Tex. Apr. 26, 2019), *R.&R. adopted*, No. 4:18-CV-362, 2019 WL 2526536 (E.D. Tex. June 19, 2019) ("As a consumer complaining of receiving intrusive telemarketing calls, Plaintiff falls directly within the zone of interests protected by the TCPA.").

And so, considering the relevant factors in light of the steep burden that ICE faces here, the Court finds that ICE has not made a compelling case that the Court's assertion of jurisdiction is unreasonable. As such, it does not go against the interests of fair play and substantial justice to allow Texas, a state with which ICE has sufficient minimum contacts, to exercise specific personal jurisdiction over ICE on McCormick's TCPA violation claim.[4]

## CONCLUSION

It is therefore **ORDERED** that the Defendant ICE Enterprise, LLC's Amended Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #14) will be **DENIED.**

**SIGNED this 14th day of August, 2023.**



AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[4] In McCormick's response to the pending motion, he requested that the parties be allowed to engage in jurisdictional discovery (Dkt. #16 at p. 10). Since the Court has found that jurisdiction is sufficient based on the facts pleaded by McCormick, the alternative request by McCormick will be denied as moot.